UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON TECHNOLOGIES INC. et al,<br><br>  Plaintiffs,<br>  v.<br><br>LI QIANG et al<br><br>  Defendants. | CASE NO. 2:23-cv-01060-TL<br><br>ORDER ON MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION |

This is an action for damages and injunctive relief for trademark infringement and related claims involving the Amazon Fire TV brand. This matter comes before the Court on Plaintiffs Amazon.com, Inc., Amazon Technologies Inc., and Amazon.com Services LLC (collectively, "Amazon Plaintiffs")'s *Ex Parte* Motion for Default Judgment and Permanent Injunction against Defendants Li Qiang and Shenzhen Yinxi Electronic Commerce Co., Ltd. Dkt. No. 21. Defendants have not appeared or responded to the motion. Having reviewed the relevant record, the Court GRANTS IN PART and DENIES IN PART the motion.

# I. BACKGROUND

In recent months, the Western District of Washington has seen "numerous cases brought by Amazon.com, Inc. and Amazon.com Services, LLC, together with other intellectual property owners, against third parties allegedly facilitating the sale of counterfeit products in the Amazon.com store." General Order 03-23, at 1 (Mar. 7, 2023). The cases are referred to collectively as the "Counterfeit Enforcement Actions." *Id.* This is one of those cases.

Further, the instant motion is the latest in a series of recent motions for default judgment by Amazon Plaintiffs and/or its selling partners that have been handled by courts in this District. *See, e.g.*, *Amazon.com, Inc. v. Dong*, C23-0159, 2024 WL 775900 (W.D. Wash. Feb. 26, 2024) (Lin, J.); *Amazon.com, Inc. v. Wong*, No. C19-990, 2024 WL 553695 (W.D. Wash. Feb. 12, 2024) (Robart, J.); *Amazon.com, Inc. v. Dai*, No. C21-170, 2023 WL 6233835 (W.D. Wash. Sept. 26, 2023) (Martinez, J.); *Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217, 2022 WL 19000499 (W.D. Wash. Oct. 3, 2022) (Lasnik, J.); *Amazon.com, Inc. v. White*, No. C20-1773, 2022 WL 1641423 (W.D. Wash. May 24, 2022) (Chun, J.); *see also Amazon.com v. Kurth*, No. C18-353, 2019 WL 3426064 (W.D. Wash. July 30, 2019) (Jones, J.).

**A.   The Plaintiffs**

Plaintiff Amazon.com, Inc. ("Amazon.com") is a Delaware corporation with its principal place of business in Seattle, Washington. Dkt. No. 1 ¶ 11.

Plaintiff Amazon Technologies, Inc. ("Amazon Technologies") is a Nevada corporation with its principal place of business in Seattle, Washington. Dkt. No. 1 ¶ 12. Amazon Technologies is the owner of the Amazon Smile Trademark, which covers "portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, image, and audio files, digital audio and media players, cameras, electronic book readers and set-top boxes." *Id.* ¶ 7.

1    Plaintiff Amazon.com Services LLC ("Amazon Services") is a Delaware company with
2  its principal place of business in Seattle, Washington. Dkt. No. 1 ¶ 11. Amazon Services is the
3  owner and operator of the Amazon.com store ("Amazon Store") and equivalent counterpart
4  international stores and websites. *Id.* ¶¶ 2–3. Some products in the Amazon Store are sold
5  directly by Amazon Plaintiffs, while others are sold by its third-party selling partners. *Id.* ¶ 3.
6    Amazon also develops, manufactures, and sells Amazon's own products to consumers in
7  the Amazon Store and elsewhere. *Id.* ¶ 4. Among those products are Amazon's Fire TV devices,
8  which were released in 2014 and transform users' televisions into "smart" television devices,
9  allowing users to download and use video streaming apps, music apps, and video game apps,
10 among other apps available from Amazon's Appstore. *Id.* Each Amazon Fire TV device includes
11 a Fire TV remote. *Id.* ¶ 5.

12 **B.    The Allegations**

13    **1.    The Amazon Store**

14    In May 2021, Defendants established the ROM Selling Account with the Amazon Store.
15 Dkt. No. 1 ¶ 31. To become a third-party seller in the Amazon Store, sellers are required to agree
16 to the Amazon Services Business Solutions Agreement ("BSA"), which governs the seller's
17 access to and use of Amazon Plaintiffs' services and states Amazon Plaintiffs' rules for selling in
18 the Amazon store. *Id.* ¶ 32. By entering into the BSA, each seller represents and warrants that it
19 "will comply with all applicable Laws in [the] performance of its obligations and exercise of its
20 rights" under the BSA. *Id.*; *see* Dkt. No. 1 at 27 (BSA).

21    Under the terms of the BSA, Amazon Plaintiffs identify the sale of counterfeit goods as
22 "deceptive, fraudulent, or illegal activity" in violation of its policies, reserving the right to
23 withhold payments and terminate the selling account of any bad actor who engages in such
24 conduct. Dkt. No. 1 ¶ 33; *id.* at 25–26. The BSA requires the seller to defend, indemnify, and

hold harmless Amazon Plaintiffs against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." *Id.* at 27.

The BSA also incorporates Amazon Plaintiffs' Anti-Counterfeiting Policy, which expressly prohibits the sale of counterfeit goods in the Amazon Store and describes Amazon Plaintiffs' commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store as well as the consequences of doing so. Dkt. No. 1 ¶¶ 34–36; *see id.* at 54–55 (policy).

### 2. Defendants' Selling Accounts

Amazon Plaintiffs examined three samples of Amazon Fire TV remotes that the ROM Selling Account had in inventory and determined that the products are counterfeit and bear a counterfeit Amazon Smile Trademark. Dkt. No. 1 ¶ 40. Amazon Plaintiffs determined that the products bore "numerous discrepancies from authentic Amazon Fire TV remotes," including: the exterior and interior of the external plastic body of the remote; the buttons; and the components and construction of the printed circuit board. *Id.* In particular:

> Amazon determined that the remotes examined were not genuine Amazon Fire TV remotes manufactured or authorized by Amazon or its affiliates. This determination was based on the ROM Selling Account's remotes' deviations from authentic Amazon Fire TV remotes, including differences in the exterior and interior of the plastic body of the remote, buttons, components, and construction of the printed circuit board, which is the internal portion of the remote containing the microchips and other electrical components of the remote.

Dkt. No. 25 ¶ 4 (Biddle declaration). Based on their review, Amazon Plaintiffs concluded that the Fire TV remotes being offered for sale by the ROM Selling Account were counterfeit. *Id.*

After Amazon Plaintiffs confirmed the counterfeit sales, they blocked the ROM Selling Account from further sales in the Amazon store. Dkt. No. 1 ¶ 43. Through information received from third-party payment service provider Payoneer Inc. ("Payoneer"), Amazon Plaintiffs confirmed that proceeds from the ROM Selling Account were sent to Payoneer accounts

controlled by Defendants. Dkt. No. 23 ¶ 3 (Commerson declaration). Amazon Plaintiffs' records reflect that the ROM Selling Account sold approximately $135,172 in counterfeit Fire TV remotes. Dkt. No. 24 ¶ 7 (Calvert declaration).

### 3. Procedural History

On July 17, 2023, Amazon Plaintiffs commenced the instant action. Dkt. No. 1. Amazon Plaintiffs filed a motion for alternative service (*ex parte*) on October 26, 2023 (Dkt. No. 11), and the Court granted the motion. Dkt. No. 14. On November 13, 2023, Plaintiffs completed alternative service. Dkt. Nos. 15, 16. On December 19, 2023, the Clerk entered default against Defendants Li Qiang and Shenzhen Yinxi Electronic Commerce Co., Ltd. Dkt. No. 18. On March 25, 2024, Amazon Plaintiffs filed the instant motion for default judgment against Defendants Qiang and Shenzhen Yinxi Electronic Commerce Co., Ltd., including a request for damages and injunctive relief. Dkt. No. 21.

Following the instant motion, Amazon Plaintiffs voluntarily dismissed Defendant Does 1–10. Dkt. No. 27.

## II.   LEGAL STANDARD

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When considering whether to exercise discretion in entering default judgments, courts may consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the

Federal Rules of Civil Procedure. *Id.* at 1471–72. Courts reviewing motions for default judgment must accept the allegations in the complaint as true, except facts related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff & Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*). Damages are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

### III. DISCUSSION

**A.  Jurisdiction**

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

**1.  Subject Matter Jurisdiction**

The Court finds that it has subject matter jurisdiction in this matter based on Plaintiffs' claims for trademark counterfeiting and infringement and false designation of origin. 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1331, 1338. The Court also finds that it has supplemental jurisdiction over Plaintiffs' state-law claim under the WCPA and breach of contract claim. 28 U.S.C. §§ 1332, 1367.

**2.  Personal Jurisdiction**

Washington's long-arm statute is coextensive with the reach of federal due process. Wash. Rev. Code § 4.28.180. Therefore, to exercise personal jurisdiction over a nonresident defendant, the defendant need only have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend traditional notions of fair play and

1  substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks

2  omitted). This means a "defendant's conduct and connection with the forum State must be such

3  that the defendant should reasonably anticipate being haled into court there." *Sher v. Johnson*,

4  911 F.2d 1357, 1361 (9th Cir. 1990) (internal quotation marks and citation omitted).

5        Accepting Amazon Plaintiffs' allegations as true, the Court finds that it has personal

6  jurisdiction over Defendants, who "affirmatively undertook to do business with [Amazon

7  Plaintiffs], corporations with their principal place of business in Washington, and sold in the

8  Amazon Store products bearing counterfeit versions of the Amazon Smile Trademark . . . . [and]

9  shipped products to consumers in Washington" bearing counterfeit versions of the Amazon

10 Smile Trademark. Dkt. No. 1 ¶ 18. In other words, Defendants "transacted business using a

11 Washington state company as its sales platform, reached out to do business with Washington

12 residents through that platform, and sold counterfeit products to Washington residents." *Wong*,

13 2024 WL 553695, at *2; *accord Sirowl Tech.*, 2022 WL 19000499, at *1. Further, "Plaintiffs'

14 claims arose from these contacts with Washington state." *Id.* Defendants also "entered into an

15 ongoing contractual relationship with a Washington State company . . . and then violated that

16 contractual relationship." *Dai*, 2023 WL 6233835, at *2.[1]

17 **B.  Propriety of Default Judgment**

18     Considering the *Eitel* factors, the Court finds that entry of default judgment is proper.

19     **1.  Factor One: Prejudice to Plaintiffs**

20 Without entry of default judgment Plaintiffs will be prejudiced. Amazon Plaintiffs have

21 attempted to litigate this case and vindicate its rights under federal and state law against

22 Defendants. But Defendants have failed to appear or participate in this litigation despite being

---

[1] The Court thus need not reach Plaintiffs' alternative basis for personal jurisdiction: the presence of a forum selection clause in the BSA. *See* Dkt. No. 21 at 10.

personally served. "Without default judgment, Plaintiffs will suffer prejudice because they will 'be denied the right to judicial resolution' of their claims and will be 'without other recourse for recovery.'" *Wong*, 2024 WL 553695, at *3 (quoting *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005)). This factor favors entry of default judgment.

2. **Factors Two and Three: Merits of Plaintiffs' Claims and Sufficiency of Complaint**

Taking the allegations in Amazon Plaintiffs' amended complaint as true, Amazon Plaintiffs have sufficiently pleaded potentially meritorious claims. *See PepsiCo, Inc. v. Calif. Sec'y Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth Circuit has suggested that these two *Eitel* factors require plaintiffs to state a claim on which they can recover). The Court reviews each claim in turn.

a. *Claim One: Trademark Counterfeiting and Trademark Infringement*

Plaintiff Amazon Technologies brings a claim for trademark counterfeiting and infringement against Defendants. Dkt. No. 1 ¶ 45–51. To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, Plaintiff Amazon Technologies must show that Defendants used:

> (1) a reproduction, counterfeit, copy or colorable imitation of [its] registered trademark, (2) without its consent, (3) in commerce, (4) in connection with the sale, offering for sale, distribution or advertising of any goods, (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.

*Wong*, 2024 WL 553695, at *4 (quoting *Kurth*, 2019 WL 3426064, at *2).

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *Id.* (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408

F.3d 596, 608 (9th Cir. 2005)). Courts generally evaluate eight factors to determine whether confusion is likely:

> 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets.

*KP Permanent Make-Up*, 408 F.3d at 608 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). "Where a defendant uses a counterfeit mark, however, courts both within and outside the Ninth Circuit presume a likelihood of consumer confusion." *Id.* (citing *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (compiling cases)). A "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Here, Plaintiff Amazon Technologies alleges that it owns the Amazon Smile Trademark, Registration No. 5,775,763 (IC 9). Dkt. No. 1 ¶ 7; *see also* Dkt. No. 1 at 23 (copy of registration certificate from the United States Patent and Trademark Office for the Amazon Smile Trademark). Defendants advertised, marketed, offered, and sold, without authorization, counterfeit Amazon Fire TV remotes bearing the Amazon Smile Trademark. Dkt. No. 1 ¶¶ 38–43; Dkt. No. 21 at 13. Accepting these allegations as true, the Court finds that it is likely that a reasonable consumer would confuse the products sold through the ROM Selling Account in the Amazon Store with genuine Amazon Fire TV products. Therefore, Amazon Plaintiffs have stated a claim against Defendants for trademark infringement in violation of 15 U.S.C. § 1114, and the second and third *Eitel* factors weigh in favor of entry of default judgment on that claim.

      **b.**    *Claims Two and Three: False Designation of Origin and False Advertising*

Amazon Plaintiffs bring claims for false designation of origin under 15 U.S.C. § 1125(a)(1)(A) and false advertising under 15 U.S.C. § 1125(a)(1)(B). Dkt. No. 1 ¶¶ 52–68.

To state a claim for false designation of origin, each Plaintiff must allege that Defendants "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Wong*, 2024 WL 553695, at *5 (quoting *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015)). "Although [Plaintiff Amazon Technologies] is the trademark holder in this case and not Amazon.com, under § 1125(a), '"any person who believes that he or she is likely to be damaged" by a defendant's false advertising' may sue." *Dai*, 2023 WL 6233835, at *3 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)).

To state a claim for false advertising, each Plaintiff must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Wong*, 2024 WL 553695, at *5 (quoting *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)). To constitute a statement made in a commercial advertisement, the statement must be:

> (1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the

> representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.

*Wong*, 2024 WL 553695, at *6 (quoting *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008)).

(1) <u>Plaintiff Amazon Technologies</u>

Here, Plaintiff Amazon Technologies alleges that Defendants sold counterfeit Amazon Fire TV products bearing the Amazon Smile Trademark. Dkt. No. 1 ¶¶ 52–60; *see also* Dkt. No. 21 at 14–16. Defendants also engaged in commercial advertising or promotion of those counterfeit products. Dkt. No. 1 ¶¶ 38–39, 56. This unauthorized misuse of the Amazon Smile Trademark deceived customers into believing that the products were authentic when they were actually counterfeit. *Id.* ¶¶ 9, 41–44, 56. The advertising, marketing, and selling of products bearing the counterfeit versions of the Amazon Smile Trademark were used to compete unfairly with Plaintiff Amazon Technologies (*id.* ¶ 56), resulting in tens of thousands of dollars in sales to competitors of Plaintiff (Dkt. No. 21 at 9). *See infra* Section III.C. Therefore, Plaintiff Amazon Technologies has stated claims for both false designation of origin and false advertising. *See Wong*, 2024 553695, at *5 (holding the same); *White*, 2022 WL 1641423, at *3 (same).

(2) <u>Plaintiffs Amazon.com and Amazon Services</u>

Plaintiffs Amazon.com and Amazon Services allege that Defendants deceived them about the authenticity of the products they were advertising, marketing, offering, and selling, in violation of the BSA and Amazon Plaintiffs' Anti-Counterfeiting Policies. Dkt. No. 1 ¶¶ 61–68; *see also id.* ¶¶ 22–30 (describing Amazon Plaintiffs' efforts to address the sale of counterfeit goods in its stores). Defendants' acts undermine and jeopardize consumer trust in Plaintiffs and the Amazon Store. *Id.* ¶ 66. Therefore, Plaintiffs Amazon.com and Amazon Services have stated

a claim for false designation of origin. *See Dai*, 2023 WL 6233835, at *3 (holding the same); *Sirowl Tech.*, 2022 WL 19000499, at *3 (same), *White*, 2022 WL 1641423, at *3 (same).

However, Plaintiffs Amazon.com and Amazon Services do not allege to be "in commercial competition" with Defendants. *See* Dkt. No. 1 ¶¶ 61–68. Instead, they allege that "Defendants' deceptive acts were material to Amazon's decision to allow Defendants to sell in the Amazon Store because Amazon would not have allowed Defendants to do so but for their deceptive acts." *Id.* ¶ 63. Plaintiffs Amazon.com and Amazon Services have thus not stated a claim for false advertising.[2] *See Dong*, 2024 WL 775900, at *6 (holding the same); *Wong*, 2024 WL 553695, at *6 (holding the same). Therefore, as to Plaintiffs Amazon.com and Amazon Services's claim of false advertising, Plaintiffs' motion is DENIED, and the claim with respect to Plaintiffs Amazon.com and Amazon Services is DISMISSED.

### c. *Claim Four: Violation of WCPA*

Plaintiffs jointly bring a claim under the Washington Consumer Protection Act ("WCPA"). Dkt. No. 1 ¶¶ 69–73. To state a claim under the WCPA, Plaintiffs must allege "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Dai*, 2023 WL 6233835, at *4 (quoting *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1011, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020)). "Absent unusual circumstances, the analysis of a CPA claim will follow that of the [federal] trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Id.* (quoting *Safeworks, LLC v.*

---

[2] Some courts in this District appear to have analyzed claims of false designation of origin and false advertising under the same elements. *See, e.g.*, *Dai*, 2023 WL 6233835, at *3; *Sirowl Tech.*, 2022 WL 19000499, at *2. Those courts listed the elements for a false designation of origin claim but did not review the elements of a false advertising claim, which are distinct from each other.

*Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010)). Here, "[b]ecause analysis of a CPA claim tracks that for a federal trademark claim, and there do not appear to be any unusual circumstances dictating a different result, Plaintiffs have already demonstrated the basis for their CPA claim." *Id.* Therefore, Amazon Plaintiffs have stated a claim under the WCPA.

### d.  *Claim Five: Breach of Contract*

Plaintiff Amazon Services brings a claim for breach of contract against Defendants. Dkt. No. 1 ¶¶ 74–78. To state a claim for breach of contract, Amazon Services must show: "(1) the existence of a contractual duty, (2) breach, (3) causation, and (4) damages." *Kurth*, 2019 WL 3426064, at *3 (citing *Larson v. Union Investment & Loan Co.*, 168 Wash. 5, 10 P.2d 557 (1932)). Here, Amazon Services alleges that Defendants entered into Amazon Services's Business Solutions Agreement ("BSA"), which incorporated by reference Amazon's Anti-Counterfeiting Policy, to which Defendants agreed to be bound. Dkt. No. 1 ¶¶ 75. This agreement required Defendant not to sell counterfeit products on the Amazon marketplace. *Id.* ¶¶ 34, 77. Here, Amazon Services claims that Defendants breached the agreement by selling counterfeit Amazon Fire TV products and that their breach damaged the integrity of Amazon's marketplace and tarnished its brand. *Id.* ¶¶ 42, 78. Taking these allegations as true, Plaintiff Amazon Services has stated a claim for breach of contract.

### 3.  **Factor Four: Sum of Money at Stake**

Given the substantial sums that are at stake and the seriousness of the alleged misconduct, this factor favors entry of default judgment. See *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (stating that this factor accounts for "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by defendant's conduct") (internal citations and quotation omitted).

### 4. Factor Five: Possibility of Dispute of Material Facts

There is little possibility that the core, material facts are in dispute. "When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis*, 33 F. Supp. 3d at 1212. Not only have Defendants failed to appear in this action, but Amazon Plaintiffs have provided detailed evidence in support of their claims that is likely difficult to be rebutted. There is no evidence suggesting a dispute could arise. This factor favors entry of default judgment.

### 5. Factor Six: Whether Default Is Due to Excusable Neglect

There is no evidence that Defendants' failure to appear is due to excusable neglect. Indeed, Amazon Plaintiffs provide evidence that shows Defendants were properly served yet have still failed to appear in this action. *See* Dkt. Nos. 15–16. This factor favors entry of default judgment.

### 6. Factor Seven: Strong Policy in Favor of Decision on the Merits

The Court maintains a strong policy preference in favor of resolution of Plaintiffs' claims on the merits. "Where, as here, a defendant fails to appear or defend itself in the action, however, the policy favoring decisions on the merits is not dispositive." *Dong*, 2024 WL 775900, at *7 (citing *Wong*, 2024 WL 553695, at *7). Defendants' decision not to appear in this case vitiates against this policy. This factor favors entry of default judgment.

Therefore, Amazon Plaintiffs' motion for default judgment is GRANTED IN PART as to all claims but Plaintiffs Amazon.com and Amazon Services's claim of false advertising, which is DISMISSED, and judgment is ENTERED as to those claims.

C.     **Statutory Damages for Plaintiffs Amazon Technologies and Amazon Services**

   1.     **Plaintiff Amazon Technologies**

"Under the Lanham Act, a plaintiff may elect whether to recover its actual damages caused by the defendants' use of a counterfeit mark or statutory damages." *Dong*, 2024 WL 775900, at *7 (citing *Wong*, 2024 WL 553695, at *7). A plaintiff may recover statutory damages of not less than $1,000 or more than $200,000 per infringed mark. 15 U.S.C. § 1117(c)(1). However, "[i]f the court finds that a defendant's use of a counterfeit mark was willful, it has discretion to award statutory damages of 'not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.'" *Id.* (quoting *Wong*, 2024 WL 553695, at *7). "[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all of those purposes." *Id.* (quoting *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023)). "The plaintiff, however, 'is not entitled to a windfall.'" *Id.* (quoting *Wong*, 2024 WL 553695, at *1). Because Plaintiff Amazon Technologies has alleged the willful infringement of the Amazon Smile Trademark (*see* Dkt. No. 1 ¶¶ 7, 14–15, 38–40, 52–60), the Court may award up to $2,000,000 in statutory damages.

Here, Plaintiff Amazon Technologies seeks statutory damages totaling $405,516—three times the aggregate sales of $135,172 from counterfeit products by Defendants in connection with the ROM Selling Account. Dkt. No. 21 at 22; Dkt. No. 24 at 2–3 (stating that "[Plaintiff] Amazon's records reflect" the aggregate sales amount).

The Court finds that Plaintiff Amazon Technologies's request is appropriate and just. Defendants engaged in an intentional and coordinated effort to sell counterfeit Amazon Fire TV products in the Amazon Store, thus deceiving customers, misusing the Amazon Smile Trademark, depriving Plaintiff Amazon Technologies of sales, and tarnishing the reputation of

1  all Plaintiffs. *See* Dkt. No. 1 ¶¶ 42, 49–50. Plaintiff Amazon Technologies's damages request is

2  thus "consistent with the amounts awarded by other courts in this District for similar conduct,

3  proportional to [Plaintiff's] actual damages, and sufficient to deter [Defendants] from further

4  willful infringement, but is not so great as to result in a windfall for [Plaintiff]." *Dong*, 2024 WL

5  775000, at *8 (quoting *Wong*, 2024 WL 553695, at *8); *see also Dai*, 2023 WL 6233835, at *5

6  (awarding the same); *Sirowl Tech.*, 2022 WL 19000499, at *5 (same); *White*, 2022 WL 1641423,

7  at *5 (same).

8  Therefore, the Court AWARDS Plaintiff Amazon Technologies the requested total amount

9  of **$405,516** in statutory damages.

10  **2.  Plaintiff Amazon Services**

11  "The general measure of damages for breach of contract is that the injured party is

12  entitled to: (1) recovery of all damages that accrue naturally from the breach, and (2) to be put

13  into as good a pecuniary position as he would have had if the contract had been performed."

14  *Entry Select Ins. Co. v. Silver Arrow Cars, Ltd.*, C19-0598, 2020 WL 1847749 (W.D. Wash. Apr.

15  13, 2020) (citing *Diedrick v. School Dis. 81*, 87 Wash.2d 598, 610 (1976)).

16  Here, Plaintiff Amazon Services seeks an award of actual damages it suffered as a result

17  of Defendants' breaches of the BSA, in an amount totaling $115,426. Dkt. No. 21 at 23; *see also*

18  Dkt. No. 24 at 3. The Court finds that Plaintiff Amazon Services's request is appropriate and

19  just. Defendants agreed to "defend, indemnify, and hold harmless Amazon . . . against any . . .

20  loss [or] damage . . . arising from or related to . . . [Defendants'] Products, including

21  the . . . refund . . . thereof." Dkt. No. 21 at 23; *see also* Dkt. No. 1 at 27. Plaintiff Amazon

22  Services did in fact issue refunds to all customers who had purchased counterfeit Amazon Fire

23  TV remotes through the ROM Selling Account, totaling $115,426 in damages. Dkt. No. 24 at 3.

24

Thus, Plaintiff Amazon Services's damages request is consistent with the amount it is entitled to under the BSA.

Therefore, the Court AWARDS Plaintiff Amazon Services the requested total amount of **$115,326** in actual damages.

**D.      Permanent Injunction for All Plaintiffs**

The Lanham Act authorizes "the 'power to grant injunctions accordingly to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). The WCPA similarly authorizes injunctions against violations of the statute. RCW 19.86.090.

In trademark cases, courts apply "traditional equitable principles" in deciding whether to grant permanent injunctive relief. *Reno*, 452 F.3d at 1137 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006)). That is, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 1137 n.11 (quoting *eBay*, 547 U.S. at 391). A trademark holder is entitled to a rebuttable presumption of irreparable harm upon a finding of a violation. 15 U.S.C. § 1116(a).

Plaintiffs seek a permanent injunction enjoining Defendants from their infringing uses of the Amazon Smile Trademark. Dkt. No. 21 at 23–26. Specifically, Plaintiffs seek an order:

> permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this order, from:

>(i) selling counterfeit or infringing products in Amazon's stores;
>
>(ii) selling counterfeit or infringing products to Amazon or any Amazon affiliate;
>
>(iii) manufacturing, importing, distributing, offering to sell, or selling any product using the Amazon Smile trademark, or which otherwise infringes Amazon's intellectual property, in any store or in any medium; and
>
>(iv) assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities listed in (i) through (iii) above.

*Id.* at 23–24. Plaintiffs argue that all four *eBay* factors weigh in favor of a permanent injunction. *See id.* at 25–28. The Court agrees.

First, Plaintiffs are entitled to a rebuttable presumption of irreparable harm, as they have alleged (and the Court accepts as true) that Defendants have committed trademark infringement and false designation of origin, among other claims. *See* 15 U.S.C. § 1116(a). Defendants present no evidence to rebut this presumption, and the Court finds no such evidence in the record.

Second, remedies at law are inadequate to compensate Plaintiffs, who have alleged harm to their reputation and goodwill. "Harm resulting from lost customer goodwill 'is neither easily calculable, nor easily compensable' and thus cannot be remedied by a monetary award." *Dong*, 2024 WL 775000, at *10 (quoting *Wong*, 2024 WL 553695, at *10). Moreover, Defendants' failure to appear "suggests that their infringing behavior may continue absent an injunction." *Id.* (citing *Wong*, 2024 WL 553695, at *10).

Third, the balance of hardships strongly favors Plaintiffs. Without an injunction, Plaintiffs may suffer further harm to their reputation through counterfeit sales. "On the other hand, because Defendants never had a right to infringe [Amazon Plaintiffs'] trademarks in the first place, they will suffer no harm from an injunction prohibiting unlawful infringement in the future." *Id.* (citing *Wong*, 2024 WL 553695, at *10); *see also T-Mobile USA, Inc. v. Terry*, 862 F.

Supp. 2d 1121, 1133 (W.D. Wash. 2012) (holding defendants had "no legitimate interest in" continuing deceptive conduct).

Finally, a permanent injunction would serve the public interest "in protecting trademark holders' rights and minimizing the confusion caused by the presence of counterfeit products in the marketplace." *Wong*, 2024 WL 553695, at *10 (citing *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014)).

Therefore, the Court PERMANENTLY ENJOINS Defendants on the terms requested.

### IV.   CONCLUSION

Accordingly, it is hereby ORDERED:

(1) Plaintiffs' *Ex Parte* Motion for Default Judgment and Permanent Injunction Against Defendants Li Qiang and Shenzhen Yinxi Electronic Commerce Co., Ltd. (Dkt. No. 21) is GRANTED IN PART and DENIED IN PART.

(2) Judgment is ENTERED as to all claims except for Plaintiffs Amazon.com and Amazon Services's claim for false advertising, which is DISMISSED.

(3) Plaintiff Amazon Technologies is AWARDED statutory damages of $405,516, jointly and severally.

(4) Plaintiff Amazon Services is AWARDED actual damages of $115,426, jointly and severally.

(5) Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this order, are PERMANENTLY ENJOINED from:

   a. selling counterfeit or infringing products in Amazon's stores;

      b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;

      c. manufacturing, importing, distributing, offering to sell, or selling any product using the Amazon Smile Trademark, or which otherwise infringes Amazon's intellectual property, in any store or in any medium; and

      d. assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities listed in (a) through (c) above.

(6) The Court RETAINS jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

(7) Plaintiffs' counsel is DIRECTED to serve a copy of this Order and Injunction on Defendants' last known email addresses registered with Payoneer Inc., which Plaintiffs used to complete service.

Dated this 12th day of April 2024.

                                              Tana Lin
                                              United States District Judge